**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-3697-21

STATE OF NEW JERSEY,

     Plaintiff-Respondent,

v.

FURN-LEE SALOMON, a/k/a
FURN-LEE SOLOMON,

     Defendant-Appellant.

_____

Submitted February 28, 2024 – Decided May 3, 2024

Before Judges Accurso and Walcott-Henderson.

On appeal from the Superior Court of New Jersey, Law Division, Union County, Indictment No. 97-01-0121.

Jennifer Nicole Sellitti, Public Defender, attorney for appellant (Steven M. Gilson, Designated Counsel, on the brief).

William A. Daniel, Union County Prosecutor, attorney for respondent (Milton S. Leibowitz, Assistant Prosecutor, of counsel and on the brief).

PER CURIAM

Defendant Furn-Lee Salomon appeals from the December 14, 2021 order denying his motion for a new trial based on newly discovered evidence, specifically the abstract of a scientific paper identifying alcohol abuse as a risk factor for rupture of intracranial aneurysms, and his motion for a medical expert at the State's expense. As we are convinced both motions were correctly decided, we affirm, essentially for the reasons expressed by Judge Candido Rodriguez, Jr. in the written decision accompanying his order.

Defendant was convicted by a jury in 2003 of first-degree murder in the beating death of Fletcher Brown. State v. Salomon, No. A-4149-03 (App. Div. Apr. 28, 2006) (slip op. at 1-2). The State's forensic pathologist testified at trial she was not convinced Brown's death was a homicide following her initial examination of the body. Although she found ample evidence that Brown had been badly beaten, his death was caused by the rupture of a pre-existing berry aneurysm in the base of his brain.

The pathologist testified the rupture of an aneurysm like that could occur spontaneously, or as a result of "a lot of alcohol in his system," cocaine use, or blunt force trauma. Toxicology results revealed Brown's blood alcohol level was .305 at the time of his death and there were cocaine metabolites in his blood and urine. According to the pathologist, she became certain the rupture

2

of the aneurysm and Brown's death were brought on by blunt force trauma to the back of his neck only after discovering an area of dramatic hemorrhage deep in the semispinalis muscles on the right side of his cervical spine. On cross-examination, the pathologist agreed with defense counsel that "Brown's use of cocaine and the stress of this fight or assault" could be a contributing factor to the bursting of the aneurysm, but she maintained the actual cause was blunt force trauma to Brown's neck.

The defendant presented his own expert, the Chief of Neuropathology at Mt. Sinai Hospital in Manhattan. Although agreeing with the State's pathologist that Brown's death was caused by the rupture of a berry aneurysm, he disagreed the rupture was brought on by blunt force trauma. In the defense expert's opinion, "[t]rauma is not a predisposing factor in the rupture of a berry aneurysm in the absence of severe trauma to the head, the degree of trauma that would produce a skull fracture or other evidence of damage to the brain." He testified he was "not aware of any literature that trauma predisposes to the rupture of this kind of aneurysm," in the absence of that sort of severe head trauma. The State's pathologist had conceded Brown did not suffer a skull fracture or any injury to his brain in the assault. The defense expert specifically referenced a New England Journal of Medicine article that

A-3697-21

included alcohol abuse among several risk factors for rupture of intercranial aneurysms but not trauma.

Defendant's expert opined the rupture of Brown's berry aneurysm and death were likely the result of a transient increase in blood pressure caused by "the stress of being attacked." The doctor also opined the victim's cocaine use may have also had the same effect of temporarily causing a rise in blood pressure resulting in a rupture in the aneurysm, noting the "rather sizable" body of scientific "literature relating rupture of berry aneurysm to exposure to cocaine."

The question of whether the rupture of Brown's berry aneurysm was caused by blunt force trauma or something else was obviously hotly contested at trial. The issue was further addressed on direct appeal in our rejection of defendant's contention that the trial court failed to adequately mold the jury charge to reflect his contention "that death was caused by elevated blood pressure and cocaine use and was never contemplated by defendant." Salomon, Id. at 8-15. Judge Rodriguez thus found that defendant's proffer of the abstract of a paper entitled "Alcohol Consumption and Aneurysmal Subarachnoid Hemorrhage," suggesting a link between ruptured aneurysms

4

and alcohol consumption — although published in 2017, almost fifteen years after defendant's trial — was "not exactly newly discovered evidence."

The judge found the jury considered "the connection between the berry aneurysm and the alcohol consumption." The State's own expert testified the victim's ruptured aneurysm could have happened spontaneously or as a result of "a lot of alcohol in his system." Applying the <u>Carter</u> factors, that new evidence "must be (1) material to the issue and not merely cumulative or impeaching or contradictory; (2) discovered since the trial and not discoverable by reasonable diligence beforehand; and (3) of the sort that would probably change the jury's verdict if a new trial were granted" to entitle a defendant to a new trial, the judge found defendant's evidence obviously could not meet the mark. <u>State v. Carter</u>, 85 N.J. 300, 314 (1981). The judge further found the State could not be forced to pay for a defense expert "to interpret information in a one-page abstract, which appears more speculative than substantive."

We agree that defendant's proffered abstract does not qualify as newly discovered evidence under the <u>Carter</u> test, thus obviating the need for a defense medical expert. We affirm the denial of defendant's motions,

essentially for the reasons expressed by Judge Rodriguez in his cogent and well-reasoned opinion.

Affirmed.

I hereby certify that the foregoing
is a true copy of the original on
file in my office.

CLERK OF THE APPELLATE DIVISION

A-3697-21